1  Jesse C. Ferrantella CA Bar No. 279131
   jesse.ferrantella@ogletree.com
2  Yousaf M. Jafri CA Bar No. 314773
   yousaf.jafri@ogletree.com
3  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
4  4660 La Jolla Village Drive, Suite 900
   San Diego, CA  92122
5  Telephone:     858-652-3100
   Facsimile:     858-652-3101
6
7  Attorneys for HBA HARRIS BAY AREA, LLC

8                **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | ALVIN NORMAN, individually, and on | Case No.
   behalf of other members of the general public
12 | similarly situated; | **CLASS ACTION**

13 |              Plaintiff, | **DEFENDANT'S NOTICE OF REMOVAL
   OF CIVIL ACTION TO UNITED STATES
14 |        v. | DISTRICT COURT**

15 | HARRIS BAY AREA, LLC, a Minnesota | [28 U.S.C. § 1332(d) (Class Action Fairness
   limited liability company; and DOES 1 | Act)]
16 | through 100, inclusive,
17 |              Defendants. | [Filed concurrently with Civil Cover Sheet;
   Certificate of Interested Parties; and Declarations
18 | of Brenda Devlin and Jesse Ferrantella]

19 | Complaint Filed:  September 13, 2023
   Removal Date:     November 3, 2023
20

21

22

23

24

25

26

27

28

Defendant HARRIS BAY AREA, LLC ("HBA") removes this action, originally commenced in the Superior Court of the State of California for the County of San Francisco, Case No. CGC-23-609051, to the United States District Court for the Northern District of California. Removal is proper under 28 U.S.C. Section 1332(d) (the Class Action Fairness Act ["CAFA"]) and Section 1446 because (1) Plaintiff and other members of the putative class are citizens of a State different from HBA; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied here.

Removal is also proper because this Court has original jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331, as this action arises under federal law. Specifically, Plaintiff's claims are substantially dependent upon the interpretation of collective bargaining agreements across 8 separate bargaining units that govern the terms and conditions of employment. The claims are, therefore, preempted by Section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 141 et seq., and this action may be removed to this Court pursuant to 28 U.S.C. § 1441(a) and (c). In support of this removal, HBA states the following pursuant to 28 U.S.C. § 1446(a):

## I.    <u>BACKGROUND AND SUMMARY OF PLEADINGS</u>

1.    HBA is a mechanical contractor specializing in design and engineering, construction, building automation, service, manufacturing, conveyors and end-to-end building systems. Declaration of Brenda Devlin ("Devlin Decl."), ¶ 3. Plaintiff Alvin Norman ("Plaintiff") was employed by HBA from approximately March 27, 2023 to March 30, 2023. *See* Devlin Decl., ¶ 9; *see* Declaration of Jesse C. Ferrantella ("Ferrantella Decl."), ¶ 2, Exhibit A – Plaintiff's Operative Complaint (the "Complaint"), ¶ 17. During the applicable limitations period, i.e. from September 13, 2019 to the present (Complaint, ¶ 13) (the alleged "Class Period"), there are approximately 593 putative class members in California who worked for HBA ("Putative Class Group"). Devlin Decl., ¶ 4.

2.    HBA, either directly or as part of an association of contractors, entered into collective bargaining agreements across 8 separate bargaining units ("CBAs") with various unions ("Unions") applicable to the Putative Class Group. Devlin Decl., ¶ 10. All of the CBAs expressly provide for

the wages, hours of work, and working conditions of the covered employees. Additionally, they all provide premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. They also all provide for meal periods for covered employees, and for a grievance procedure, including binding arbitration for any and all disputes. Devlin Decl., ¶¶ 11, 19; Exhibit 17;[1] *see also* Exhibits 1-16.

3.    On September 13, 2023, Plaintiff commenced this action in the Superior Court of California, County of San Francisco, Case No. CGC-23-609051. Plaintiff served HBA with their Complaint on October 4, 2023. *See* Ferrantella Decl., ¶ 2, Exhibit ["Ex."] A (containing true and correct copies of the Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit).

4.    HBA filed its Answer to Plaintiff's Complaint in the San Francisco County Superior Court on November 2, 2023. Ferrantella Decl., ¶ 4; Ex. B, Answer. Defendant's Answer to the Complaint is attached hereto as Exhibit B. Ferrantella Decl. ¶ 4, Exhibit B.

5.    Plaintiff's Complaint seeks damages and penalties on behalf of himself and "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Complaint, ¶ 13. As detailed below, Plaintiff's Complaint is subject to CAFA, and Plaintiff's Complaint implicates federal law because the terms and conditions of Plaintiff's and the Putative Class Group's employment are subject to at least one of the CBAs outlined above.  Devlin Decl., ¶ 11; Exhibit 17; *see also* Exhibits 1-16.

6.    A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of San Francisco. Exhibits A-B contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a), and no other proceedings have been held in this action.

## II.    REMOVAL IS PROPER UNDER CAFA

7.    Removal is proper given Plaintiff's allegations and claims. Plaintiff's Complaint asserts the following claims on a class-wide basis: (1) unpaid overtime wages (Lab. Code §§ 510 and

---

[1] Exhibit 17 contains a chart of the CBAs and the relevant provisions.

1198); (2) failure to provide meal period premiums (Lab. Code §§ 226 and 512(a)); (3) unpaid rest period premiums (Lab. Code § 226.7); (4) unpaid minimum wages (Lab. Code §§ 1194, 1197, and 1197.1)); (5) final wages not timely paid (Lab. Code §§ 201 and 202); (6) wages not timely paid during employment (Lab. Code § 204); (7) non-compliant wage statements (Lab. Code § 226(a); (8) failure to keep requisite payroll records (Lab. Code § 1174(d)); (9) unreimbursed business expenses (Lab. Code §§ 2800 and 2802); (10) violation of California Business and Professions Code §§ 17200, et seq. (Ex 1, Complaint.).

8.      CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. Section 1446.

9.      This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from Defendant; the number of individuals in Plaintiff's proposed classes in the aggregate is over 100; and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

A.      **CAFA's Diversity of Citizenship Requirement Is Satisfied**

10.     CAFA's diversity requirement is satisfied "so long as 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'" *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCX), 2015 WL 5311089, at *3 (C.D. Cal. Sept. 10, 2015) (citing *California v. IntelliGender, LLC*, 771 F.3d 1169, 1172 (9th Cir. 2014)); *Rodgers v. Central Locating Service, Ltd*., 412 F. Supp. 2d 1171, 1175 (W.D. Wa. 2006); 28 U.S.C. §§ 1332(d)(2), 1453(a), (b).

11.     Under 28 U.S.C. § 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." The Supreme Court has held the "principal place of business" is best read as referring to the place where a company's officers direct, control, and coordinate its activities. *Hertz Corp. v.*

*Friend*, 130 S. Ct. 1181, 1184 (2010). The court further clarified the principal place of business was the place where a company "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id*.

12.     Harris Bay Area, LLC is a limited liability company organized under the laws of the State of Minnesota. Devlin Decl., ¶ 8. Its executive officers who operate the entity are based in Minnesota. *Id*. Plaintiff, on the other hand, is a resident of California. (Complaint, ¶ 5; Devlin Decl., ¶ 7.) Minimal diversity is established because, at all relevant times, at least one member of the putative class of plaintiffs is a citizen of a State different from HBA. *Id*., ¶¶ 7-8.

**B.     CAFA's Class Size Requirement Is Satisfied**

13.     Plaintiff brings the Action pursuant to California Code of Civil Procedure Section 382 on behalf of the following "Class": "All current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Ferrantella Decl., ¶ 2, Ex. A, Complaint, ¶ 13.

14.     While HBA disputes Plaintiff's allegations, from September 13, 2019, through the date of the Devlin Declaration (November 2, 2023), the putative class includes, in the aggregate, at least 593 non-exempt employees. Devlin Decl., ¶ 4. Thus, CAFA's size requirement is satisfied.

**C.     CAFA'S Requisite $5 Million Amount in Controversy Is Satisfied**

15.     CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

16.     Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5,000,000]." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint").

17.    For purposes of removal, "[i]n determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th Cir. 2017) (citing *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012)). In determining whether the amount in controversy requirement is met, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289 (1938)).

18.    In a recent Ninth Circuit decision, it noted "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (citing *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). In assessing the amount in controversy, a removing defendant may rely on a chain of reasoning that includes assumptions. *Id*. at 925. Assumptions are reasonable if they are founded on the allegations of the complaint. *Id*.

19.    Among other things, Plaintiff seeks the recovery of unpaid wages, waiting time penalties, itemized wage statement penalties, meal and rest period premium pay, and reasonable attorney fees and costs, on behalf of himself and the putative classes. *See* Ferrantella Decl., ¶ 2, Ex. A, Complaint. The Complaint, on its face based on the allegations in it, satisfies the $5,000,000 threshold for CAFA removal.[2] *See* 28 U.S.C. § 1332(d).

## 1.    <u>Relevant Putative Class Group Data</u>

20.    Plaintiff seeks to certify a class group from September 13, 2019 to the present. From September 13, 2019 to the Notice of Removal, the putative class includes, in the aggregate, at least 593 non-exempt employees in California. Those employees worked at least 22,935 workweeks. The average hourly rate during the alleged class period is $58.61. Devlin Decl., ¶ 4.

---

[2] In alleging the amount in controversy for purposes of CAFA, HBA does not concede in any way that the allegations in the Complaint are true or accurate, or that Plaintiff is entitled to any of the monetary relief requested in the Complaint. Nor does HBA concede that any or all putative class members are entitled to any recovery in this case, or are appropriately included in the action. HBA also does not concede Plaintiff can bring his claims on class or representative basis, or that the appropriate venue for the claims is in court.

21.     From September 13, 2020, to the present, at least 348 non-exempt employees and putative class members in California separated their employment. The average hourly rate during the alleged class period is $58.61. This equals an average daily rate (8 hours) of approximately $468.88. Devlin Decl., ¶ 5.

22.     From September 13, 2022, to the present, at least 271 non-exempt employees in California received at least 6,363 wage statements. Devlin Decl., ¶ 6.

### 2.    Waiting Time Penalties

23.     Plaintiff alleges that "Defendants intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ. Defendants' failure to pay Plaintiff and the other class members who are no longer employed by Defendants' their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ, is in violation of California Labor Code sections 201 and 202." Ferrantella Decl., ¶ 4, Ex. A, Complaint, ¶¶ 84-85. Plaintiff further alleges that "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." *Id.*, ¶ 87.

24.     California Labor Code section 203 provides "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010). The limitations period for such waiting time penalty claims is three years. *Id.* at 1400.

25.     From September 13, 2020, to the present, at least 348 non-exempt employees and putative class members in California separated their employment. The average hourly rate during the alleged class period is $58.61. This equals an average daily rate (8 hours) of approximately $468.88. Devlin Decl., ¶ 5.

26.     Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties alone is at least **$4,895,107.20** ($58.61 per hour x 8 hours x 30 days x 348 putative class

1    members). *See Crummie v. Certified Safety, Inc.*, No. 17-CV-03892-RS, 2017 WL 4544747, at *3

2    (N.D. Cal. 2017) (finding it "completely reasonable" for the defendant to assume the maximum, 30-

3    day period of waiting time penalties where the allegations support the assumption); *Marentes v. Key*

4    *Energy Servs. Cal., Inc.*, No. L13–CV–02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23,

5    2015) (where "wages are alleged to have not been paid, the full thirty days may be used for each of

6    the putative class members.").

### 3.    <u>Wage Statement Penalties</u>

8       27.    Plaintiff also alleges "Defendants have intentionally and willfully failed to provide

9    Plaintiff and the other class members with complete and accurate wage statements. The deficiencies

10   include, but are not limited to: the failure to include the total number of hours worked by Plaintiff

11   and the other class members. As a result of Defendants' violation of California Labor Code section

12   226(a), Plaintiff and the other class members have suffered injury and damage to their statutorily-

13   protected rights." Ferrantella, Decl., ¶ 2, Ex. A, Complaint, ¶¶ 96-97. Plaintiff further alleges,

14   "Plaintiff and the other class members have been injured by Defendants' intentional and willful

15   violation of California Labor Code section 226(a) because they were denied both their legal right to

16   receive, and their protected interest in receiving, accurate and itemized wage statements pursuant to

17   California Labor Code section 226(a). Plaintiff and the other class members are entitled to recover

18   from Defendants the greater of their actual damages caused by Defendants' failure to comply with

19   California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars

20   per employee." (*Id.*, ¶¶ 98-99.)

21      28.    On behalf of himself and the putative class, Plaintiff seeks statutory penalties under

22   California Labor Code § 226(e), which provides for the greater of all actual damages or $50.00 for

23   the initial pay period in which a violation occurred and $100.00 for each subsequent pay period in

24   which a violation occurred, up to $4,000.00 per putative class member. (*Id.*, ¶¶ 96-99; Cal. Lab. Code

25   § 226(e).)

26      29.    A one-year statutory period applies to Plaintiff's claim for wage statement penalties.

27   Cal. Code Civ. Proc. §340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal. App.4th 1454, 1469

28   (2015).

30.     As noted above, from September 13, 2022, to the present, at least 271 non-exempt employees in California received at least 6,363 wage statements. Devlin Decl., ¶ 6. Therefore, based on Plaintiff's allegations, the amount in controversy for wage statement penalties is **$622,750** (271 wage statements x $50 = $13,550; 6,092 wage statements x $100 = $609,200 [$13,550+ $609,200 = $622,750]). For purposes of removal, HBA excluded any pay periods above 40 for a given employee (i.e., a $3,950 penalty), so the maximum statutory penalty alleged by Plaintiff of $4,000 (which HBA denies) is not implicated. *Id.*

### 4.     Further Data

31.     For purposes of this removal, waiting time penalties and wage statement penalties alone are more than sufficient to support the required $5,000,000 threshold amount in controversy. However, HBA has provided data sufficient to calculate and support, based on Plaintiff's allegations, an even greater amount in controversy based on alleged meal period penalties, rest period penalties, and Plaintiff's other claims. Devlin Decl., ¶¶ 4-6. There is no doubt that, as alleged, the amount in controversy exceeds the requisite threshold.

### 5.     Attorney Fees

32.     There is at least **$5,517,857.20** in controversy ($622,750 in wage statement penalties + $4,895,107.20 in waiting time penalties = $5,517,857.20).

33.     Plaintiff also seeks attorney fees in connection with the above claims. Ferrantella Decl., ¶ 2, Ex. A, Complaint, Prayer for Relief. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL

2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-controversy to above $5,000,000 CAFA threshold).

34.    Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is $1,379,464.30 ($5,517,857.20 x 0.25).

### 6.    <u>Summary</u>

35.    Based on Plaintiff's allegations, the amount in controversy is at least **$6,897,321.50** ($1,379,464.30 [attorney fees] + $5,517,857.20 [alleged damages]). Even excluding Plaintiff's other claims, including meal period penalties, rest period penalties, and overtime wages and minimum wages, the Complaint easily satisfies the $5 million threshold.

## III.    <u>REMOVAL IS PROPER UNDER FEDERAL QUESTION JURISDICTION UNDER THE LABOR MANAGEMENT RELATIONS ACT</u>

36.    This Court also has original jurisdiction under 28 U.S.C. § 1331, and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), because it is a civil action that presents a federal question.

37.    Plaintiff's claims are either based upon or preempted by federal law, specifically Section 301 of the LMRA ("Section 301"), 29 U.S.C. § 185. Under Section 301, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in a district court for the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. S. Cal. Gas Co*., 219 F.3d 1063, 1065 (9th Cir. 2000).

38.    Section 301 preempts state law claims requiring interpretation of a CBA. "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal*., 463 U.S. 1, 23 (1983).) Section 301 also preempts "any state [law] claim whose outcome depends on analysis of the terms of the agreement." *Newberry v. Pacific Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988). "[T]he key to determining the scope of Section 301 preemption is not based on how the complaint is framed," it is based on whether resolution of the claims requires "referring to the terms of the…[CBA]." *Id*. The reason is that "the interpretation of [CBAs] is exclusively a matter for arbitration under federal law." *Levy v.*

*Skywalker Sound*, 108 Cal.App.4th 753, 762 (2003). "Once preempted, 'any claim purportedly based on [a] state law is considered, from its inception, a federal claim, and therefore arises under federal law'." *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

39.     A plaintiff cannot avoid Section 301 preemption by "artfully pleading" a claim to allege state law violations. *Hyles v. Mensing*, 849 F.2d 1213, 1215 (9th Cir. 1988). For example, where "[r]esolution of plaintiffs' claim to overtime pay ... cannot be decided by mere reference to unambiguous terms of the agreement," it is preempted. *Id.* Similarly, where a collective bargaining agreement satisfies the requirements of Labor Code Section 514, and the right to overtime exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1154-55 (9th Cir. 2019). Courts also find meal and rest period claims to be preempted where the applicability of the Labor Code provisions require analysis and interpretation of a CBA. See e.g., *Coria v. Recology, Inc.*, 63 F.Supp.3d 1093, 1097 (N.D. Cal. 2014); *Ayala v. Destination Shuttle Servs. LLC*, No. cv-13-6141 GAF (PJWx), 2013 WL 12092284, at *4 (C.D. Cal. Nov. 1, 2013). Similarly, where a collective bargaining agreement satisfies the requirements of Labor Code Section 512(e), and the right meal periods exists solely as a result of the CBA, and the claim is preempted under Section 301 of the LMRA. *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal.App.4th 227, 236, 238 (2014); *Coria*, 63 F.Supp.3d at 1097.

40.     Section 301 of the LMRA provides a basis for federal jurisdiction, and authorizes federal courts to develop a federal common law of the interpretation of collective bargaining agreements. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 411 (1988). To ensure uniform interpretations of collective bargaining agreements, federal common law preempts the use of state law in collective bargaining agreement interpretation and enforcement. *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962); *Lingle*, 486 U.S. at 411.

41.     Further, all state law claims that require interpretation of a collective bargaining agreement must be brought pursuant to Section 301 of the LMRA. *Allis-Chalmers Corp. v. Lueck*, 571 U.S. 202, 211 (1985); *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1146 (9th Cir. 1988)

1    (concluding "[t]he preemptive force of section 301 is so powerful that it displaces entirely any state

2    cause of action for violation of a collective bargaining agreement . . . [and] any state claim whose

3    outcome depends on analysis of the terms of the agreement."); *see also Voorhees v. Naper Aero*

4    *Club, Inc.*, 272 F.3d 398, 403 (7th Cir. 2001) (noting that Section 301 is one of "only two areas in

5    which the Supreme Court has found that Congress intended completely to replace state law with

6    federal law for purposes of federal jurisdiction").

7        42.    Section 301 preempts California state law claims that are substantially dependent

8    upon interpretation of a CBA. *Firestone*, 219 F.3d at 1066-67 (claim preempted by Section 301

9    where the CBA had to be interpreted to resolve the plaintiff's wage claims). This remains true even

10    where interpretation was required to evaluate the employer's defense to a plaintiff's state law cause

11    of action. *See Levy v. Skywalker Sound*, 108 Cal. App. 4th 753, 769 (2003) (claim for unpaid wages

12    preempted because it "rest[ed] entirely" on a claim that plaintiff was "entitled . . . to wages at the

13    level set by the CBA"). Thus, any suit "alleging a violation of a provision of a labor contract must

14    be brought under § 301 and be resolved by reference to federal law." *Curtis*, 913 F.3d at 1152 ("A

15    state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-

16    empted by federal labor law.").

17        43.    Adjudicating Plaintiff's Complaint will require interpretation of the CBAs. First,

18    Plaintiff's claims are premised upon, and therefore derivative of, the various underlying violations

19    of the California Labor Code identified in Plaintiff's Complaint. *See* Complaint, *generally* (basing

20    claims on Labor Code violations). As detailed below, many (if not all) of the underlying labor code

21    violations alleged in Plaintiff's Complaint are preempted due to the CBAs. Thus, Section 301 of the

22    LMRA preempts the underlying Labor Code violations. *See*, *e.g.*, *Lingle*, 486 U.S. at 405-06 ("[I]f

23    the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement,

24    the application of state law . . . is preempted").

25        **A.    The Putative Class Group Is Governed by a CBA**

26        44.    Courts have found that LMRA preemption applies, and thus removal is appropriate,

27    even where the claims of the "vast majority" of putative group members are subject to LMRA

28

1   preemption. *Sachs v. Pankow Operating, Inc.*, 2:21-cv-08998-AB (ADSx), 2022 WL 489696 at *6
2   (C.D. Cal. Feb. 16, 2022).

3       45.     As noted above, HBA or an association of industry contractors with whom it is
4   affiliated have entered into CBAs across 8 separate bargaining units that apply to Putative Class
5   Group members during the Class Period. Devlin Decl. ¶ 10. All of the CBAs expressly provide for
6   the wages, hours of work, and working conditions of the covered employees. Additionally, they all
7   provide premium wage rates for all overtime hours worked and a regular hourly rate of pay for
8   covered employees of not less than 30 percent more than the state minimum wage. They also all
9   provide for meal periods, and for a grievance procedure for disputes, including binding arbitration
10  for all disputes. Devlin Decl., ¶¶ 11, 19; Exhibit 17; see also Exhibits 1-16.

11      46.     At all relevant times alleged in the Complaint, HBA has been a company engaged in
12  commerce and in an industry affecting commerce within the meaning of Sections 2(2), 2(6), and 2(7)
13  of the NLRA and Section 301(a) of the LMRA, 29 U.S.C. §§ 152(2), (6), (7) and 185(a). Devlin
14  Decl., ¶ 3.

15      47.     The CBAs across 8 separate bargaining units were negotiated with various Unions for
16  which members of the Putative Class Group are members and which exist for the purpose of
17  addressing employee grievances, labor disputes, wages, rates of pay, hours of employment,
18  conditions of work, discipline, and discharge. See Devlin Decl., ¶¶ 10, 11; Exhibits 1-17. At all
19  relevant times, these unions have been, and are, a labor organization within the meaning of Section
20  2(5) of the NLRA and 301(a) of the LMRA, 29 U.S.C. §§ 152(5) and 185(a).

21      48.     Each of the CBAs specifically recognize the union or labor organization as the
22  exclusive representative for each of their respective covered employees for the purposes of collective
23  bargaining to establish rates of pay, hours of work, and other conditions of employment. Further,
24  they provide the parties agree the CBA shall cover all working conditions, wages, and hours of
25  employment affecting the covered employees. Devlin Decl., ¶ 11, Exhibit 17; *see* Exhibits 1-16.

26

27

28

**B.**     **The Claims are Preempted by the LMRA**

    **1.**     **Plaintiff's Failure to Reference Section 301 of the LMRA in His Complaint Does Not Preclude Removal**

49.     The Complaint omits the fact that Plaintiff and the Putative Class Group's employment claims are subject to one of the CBAs. However, a plaintiff may not be permitted to "artfully plead" his complaint to conceal the true nature of the complaint. *Young v. Anthony's Fish Grottos, Inc*., 830 F.2d 993,997 (9th Cir. 1987). Thus, the Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds in Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009).

50.     An artfully pled state law claim is properly "re-characterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force of Section 301 of the LMRA "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983) ("[I]f a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises' under federal law.").

51.     To determine whether a claim alleging violations of state law is preempted by Section 301(a) of the LMRA, the Ninth Circuit employs a two-step test. *Curtis*, 913 F.3d at 1152. First, the Court asks "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Id*. (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 921 (9th Cir. 2018). If so, "the claim is preempted, and [the] analysis ends there." *Burnside*, 491 F.3d at 1059. If not, the courts consider whether a plaintiff's state law right is substantially dependent on analysis of the CBA. *Curtis*, 913 F.3d at 1153. If claims are dependent on interpretation of the CBA, then the claim is also

1   preempted by Section 301. *Franco v. E-3 Sys,* No. 19-cv-01452-HSG, 2019 WL 6358947, at *2

2   (N.D. Cal. Nov. 8, 2019) (citing *Burnside*, 491 F.3d at 159-60).

3           **C.    Plaintiff's Claims are Preempted by the LMRA**

4           52.    Plaintiff's allegations that HBA violated the California Labor Code involve various

5   rights that "exist solely as a result of the CBA" and/or are "inextricably intertwined with

6   consideration of the terms of the labor contract." *Allis-Chambers*, 471 U.S. at 213. Specifically,

7   Plaintiff's Complaint seeks damages and civil penalties, based on the following alleged violations:

8   (1) unpaid overtime wages (Lab. Code §§ 510 and 1198); (2) failure to provide meal period premiums

9   (Lab. Code §§ 226 and 512(a)); (3) unpaid rest period premiums (Lab. Code § 226.7); (4) unpaid

10  minimum wages (Lab. Code §§ 1194, 1197, and 1197.1)); (5) final wages not timely paid (Lab. Code

11  §§ 201 and 202); (6) wages not timely paid during employment (Lab. Code § 204); (7) non-compliant

12  wage statements (Lab. Code § 226(a)); (8) failure to keep requisite payroll records (Lab. Code §

13  1174(d)); (9) unreimbursed business expenses (Lab. Code §§ 2800 and 2802); (10) violation of

14  California Business and Professions Code §§ 17200, et seq.

15          53.    **Plaintiff's Overtime and Unpaid Wage Claims:** Plaintiff's Complaint seeks

16  damages, in part, for HBA's alleged failure to pay overtime. Specifically, Plaintiff alleges that HBA

17  "failed to pay Plaintiff and the other class members for all overtime hours worked. Plaintiff and the

18  other class members were required to work more than eight (8) hours per day and/or forty (40) hours

19  per week without overtime compensation for all overtime hours worked" (Complaint, ¶ 37), and

20  failed to pay overtime at the "regular rate of pay." (Complaint, ¶ 50.) In other words, the focus of

21  Plaintiff's overtime claims is that he and other Putative Class Group members were not properly

22  compensated for all overtime worked.

23          54.    An overtime claim is preempted where "[r]esolution of plaintiffs' claim to overtime

24  pay [or other wages] … cannot be decided by mere reference to unambiguous terms of the

25  agreement." *Firestone*, 281 F.3d at 802. Further, Labor Code § 514 states that § 510 (the Labor

26  Code's overtime provisions) "do not apply to an employee covered by a valid collective bargaining

27  agreement if the agreement expressly provides for the wages, hours of work, and working conditions

28  of the employees, and if the agreement provides premium wage rates for all overtime hours worked

and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." "Therefore, if the CBA that applies to an employee is a 'qualifying CBA' carved out from Section 510 by Section 514, then the right to overtime pay exists solely as a result of the CBA and therefore is preempted under § 301." *Loaiza v. Kinkisharyo Intern., LLC*, No. CV1907662JAKKSX, 2020 WL 5913282, at *3 (C.D. Cal. Oct. 6, 2020); *Franco*, 2019 WL 6358947, at *4.

55.     Assuming, *arguendo*, that Plaintiff's underlying claims are valid, the CBAs expressly satisfy the requirements of Section 514, because they provide the wages, hours of work, working conditions, premium wage rates for overtime, and an hourly pay rate that is greater than 30 percent more than the California minimum wage. Devlin Decl. ¶ 11, Exhibit 17; *see also* Exhibits 1-16. All of the employee-categories in the CBAs wage scale are assigned hourly rates of pay that exceed Labor Code § 514's requirement. *Id.; see also Sachs v. Pankow Operating, Inc.*, 2:21-cv-08998-AB (ADSx), 2022 WL 489696 at *6 (C.D. Cal. Feb. 16, 2022) (§ 514 requirements met when the "vast majority" of the employee categories in the CBA are assigned hourly rates of pay that exceed this requirement). As a result, these overtime wage claims are preempted under the LMRA analysis, and the Court will have to engage in this analysis to resolve the claims.

56.     Additionally, the Court will need to interpret the CBAs to resolve any overtime claim. The Court will have to interpret the CBAs for a variety of information, including (1) assessing the wage scale of the respective CBA the appropriate rate of pay for numerous groups of employees in the separate CBAs across 8 different bargaining units; (2) determining the applicable rates of pay and premium rates, given that the CBAs provide for items like different premium rates depending on the day or hours worked as defined; and (3) determining which time is compensable based on the timekeeping/overtime rules in the CBAs. See Devin Decl., ¶ 11, Exhibit 17, and Devin Decl., ¶ 9, Exhibit 2, pgs. 37-38, Section 42(b) (providing a second shift shall consist of six and on-half (6-1/2) hours provided that the employee shall be permitted thirty (30) minutes for meals. Pay for a full second shift period shall be a sum equal to seven (7) times the regular hourly rate as set forth in Article V plus ten percent (10%). This percentage is to be calculated using the gross taxable wage prior to any 4019(A) deductions.). Thus, if an employee has hours that he or she claims have not

been compensated, whether such time is compensable, the rate at which they need to be paid for that time, and the hours that are compensated for purposes of overtime, will require interpretation of the CBA.

57.     Plaintiff's Complaint also includes unpaid minimum wage claims that Plaintiff and other putative class members did not receive "at least minimum wages for all hours worked." (Complaint, ¶ 30, *see also id.*, ¶¶ 16(d), 19, 78.) Since Plaintiff's claim for unpaid minimum wages is based on the same or similar conduct as the overtime claim, this cause of action is also subject to the LMRA preemption arguments set forth above, and will require interpretation of the CBAs. *Loaiza*, 2020 WL 5913282, at *21 (To the extent a cause of action relies on an overtime violation, it is derivatively preempted to the same extent as a cause of action for failure to pay overtime). Furthermore, the CBAs set forth the parties' mutual agreement regarding all issues pertaining to employee wages, including hours worked. Devlin Decl. ¶ 11, Exhibit 17; *see also* Exhibits 1-16. For this additional reason, the allegedly-aggrieved employees' rights to wages, compensation, and overtime substantially depend on an analysis of the CBAs of 8 separate bargaining units.

58.     **Plaintiff's Meal Period Claims:** Plaintiff's complaint includes claims for HBA's alleged failure to provide compliant meal periods. Complaint, ¶¶ 19, 28, 61-66. Once again, these claims seek to vindicate rights that require analysis and interpretation of the CBA.

59.     California's meal period requirements do not apply to an employee covered by a valid collective bargaining agreement that satisfies the requirements of Labor Code § 512(e). Specifically, the meal period provisions do not apply to an employee specified in subdivision (f) if: (1) The employee is covered by a valid collective bargaining agreement; and (2) it expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate. Lab. Code § 512(e). Where § 512(e) applies, courts find the meal period claims preempted under Step 1 of the above LMRA preemption analysis. *Araquistain,* 229 Cal.App.4th at 236, 238; *Coria,* 63 F.Supp.3d at 1097; *Mireles v. Paragon Syst. Inc.*, No. 13-cv-122 L (BGS), 2014 WL 4385453, at *5-6 (S.D. Cal. Sept. 4, 2014).

1  Furthermore, where an analysis of the plaintiff's meal or rest period claims are dependent on

2  interpretation of the CBAs, the claims are also preempted on this basis. *Chatman v. Wedriveu, Inc*.,

3  No. 3:22-cv-04849-WHO, 2022 WL 15654244 (N.D. Cal. Oct. 28, 2022); *Raphael v. Tesoro*

4  *Refining and Marketing Co., LLC*, No. 2:15-cv-02862-ODW (Ex), 2015 WL 3970293, at *6-7 (C.D.

5  Cal. June 30, 2015); *Buck v. Cemex*, No. 1:13-cv-00701-LJO-MJS, 2013 WL 4648579, at *6 (E.D.

6  Cal. Aug. 29, 2013).

7       60.      Assuming, *arguendo*, that Plaintiff's underlying meal claims are valid, the CBAs

8  expressly satisfy the requirements of § 512(e). HBA is engaged in a design, engineering,

9  construction, and building occupation, and the CBAs provide the wages, hours of work, and working

10 conditions, expressly provide for meal periods for covered employees, final and binding arbitration

11 of disputes concerning application of its meal period provisions, premium wage rates for all overtime

12 hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state

13 minimum wage rate. Devlin Decl., ¶¶ 3, 10, 11; Exhibit 17; *see also* Exhibits 1-16. As a result, the

14 claims are preempted under Step 1 of the LMRA analysis, and the Court will have to engage in this

15 analysis to resolve the claims.

16      61.      Moreover, the Court will need to interpret the CBAs to resolve any meal period claim.

17 Each of the CBAs applicable to the 8 separate bargaining units provide for meal periods, and

18 expressly lay out the conditions under which employees are entitled to such breaks. Devlin Decl., ¶

19 11, Exhibit 17; *see also* Exhibits 1-16. To resolve Plaintiff's meal period claims, the Court will have

20 to determine the meaning of the various CBAs' requirements, which vary between the CBAs. This

21 includes the CBAs' meal period timing requirements and the employee's obligation to take meal

22 period.

23      62.      For example, the "Local 38 CBA" applicable to Plaintiff provides that "[a] meal

24 period of one-half (1/2) hour shall be allowed on the Employer's time at overtime rate if the

25 employees are required to work overtime in excess of two (2) hours in accordance with State Law.

26 Employees working overtime shall receive lunch period of one-half (1/2) hour on Employer's time

27 at the overtime rate after every four (4) hours thereafter. The foregoing shall not apply to the non-

28 day lunch period of Saturdays, Sundays or Holidays. Employees working above the ground in

construction of buildings of ten (10 or more stories shall be allowed time, in addition to the one-half (1/2) hour meal period, in which to reach the ground floor." Devlin Decl. ¶ 9, Exhibit 2, Article IX, Section 53, pg. 58. Furthermore, any grievances regarding the provisions to the CBA must be resolved via grievance procedures in the CBA: "[d]isputes shall be submitted to the Arbitration Committee by any party having a grievance through its authorized representatives." *Id*. at pg. 74.

63.     The Court will need to interpret these above provisions to resolve Plaintiff's meal claims. The Court will also be required to interpret the other CBAs at issue for 8 separate bargaining units, and conduct a similar analysis.

64.     **Additional Claims:** Plaintiff's failure to timely pay all wages claims (i.e., failure to timely pay all wages during employment and upon separation of employment), wage statement claims, and unfair competition claims derive from his underlying claims. *See* Complaint, ¶¶ 80, 82-87, 88-93, 96 113 ("Defendants' activities as alleged herein are violations of California law, and constitute unlawful business acts and practices in violation of California Business & Professions Code section 17200, et seq.). Thus, these claims are also dependent upon an analysis and interpretation of the CBAs, as set forth above. *See Curtis,* 913 F.3d at 1150, n. 3 (finding inaccurate pay stub and final pay claims to be derivative of and dependent on underlying claims of overtime, meal and rest period, and minimum wages); *Estrada v. Kaiser Foundation Hospitals*, 678 Fed. Appx. 494, 497 (9th Cir. 2017) (finding that when a claim derives from a LMRA-preempted claim, the derivative claim also fails); *Jimenez v. Young's Market Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082 at *13 (N.D. Cal. Dec. 20, 2021) (finding that claims for failure to pay final wages and provide accurate wage statements were preempted because they derivative of substantive claims for owed overtime and meal break violations).[3]

---

[3] Plaintiff's remaining claims are also preempted. They are preempted because the CBA must be interpreted to resolve the plaintiff's claims, and/or because they are derivative of preempted claims. *See Firestone*, 219 F.3d at 1066-67; *Estrada v. Kaiser Found. Hospitals*, 678 Fed.App 494, 497 (9th Cir. 2017); *see, e.g.,* Mylles Decl., ¶ 9, Exhibit 1, Article IX, Section 52, pg. 58 (providing an "authorized rest period time shall be based daily at the rate of ten (10) minutes net rest time for every four (4) hours worked or major function thereof. Rest periods shall take place at employer-designated areas, which may include or be limited to the employees' immediate area. If a dispute arises over rest periods it shall be referred to the Joint Arbitration Board."); *see also id*., Article VII, Section 44(b)-(c), pg. 40 (providing employees with reimbursement satisfactory to the employee/employer for all days employees are required to stay overnight, and additional travel expenses on jobs over fifty miles from the point of dispatch; and, providing reimbursement for "telephone calls, tools,

65.     **Grievance and Arbitration Procedure:** Moreover, each of the CBAs expressly call for final and binding arbitration for any and all disputes concerning the application or interpretation of the CBAs' provisions. Devlin Decl., ¶¶ 11, 19; Exhibit 17; *see also* Exhibits 1-16. Accordingly, all covered employees of the various CBAs are subject to arbitration as the exclusive remedy per their respective CBAs.

66.     The promotion of extra-judicial dispute resolution is another purpose of Section 301 preemption. State court lawsuits properly removed on preemption grounds may then be deferred to arbitration, if the parties to the CBA have so agreed. *See Livadas v. Bradshaw*, 512 U.S. 107, 142 fn. 18 (1994). As a result, Plaintiff's claims and those of the Putative Class Group are therefore subject to exclusive grievance procedures and arbitration as discussed above. Accordingly, any alleged violation of the various CBAs are subject to the grievance procedures set forth therein. As all of Plaintiff's claims are in essence alleged violations of the CBAs, the Court will necessarily have to interpret the grievance and arbitration provisions to analyze the claims in this case. That is, the Court will be required to determine whether the Putative Class Group was first required to exhaust the grievance procedures, whether they did in fact exhaust those procedures, and whether the parties agreed to arbitrate all or some of their claims. The exhaustion of administrative remedies is a procedural prerequisite to maintaining a Section 301 action. *Smith v. Colgate-Palmolive Co*., 943 F.2d 764, 767 (7th Cir. 1991). Before filing suit, federal labor policy dictates that an employee is "[o]rdinarily ...  required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)); *Smith*, 943 F.2d at 771.

67.     Accordingly, the claims are substantially dependent upon the interpretation of the terms and provisions of the foregoing CBAs of 8 separate bargaining units. As a result, removal to federal court is warranted.

---

purchase of material, travel cards, etc. authorized by Employer and incurred as a legitimate job expense shall be reimbursed, including job related personal cell phone use."). However, given the clear preemption of the claims discussed, and the fact that the Court may clearly exercise supplemental jurisdiction of the remaining claims under 28 U.S.C. § 1367(a), HBA does not further discuss the remaining preempted claims.

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT

**D.**    **The Court May Exercise Supplemental Jurisdiction of Plaintiff's Remaining Claim**

68.    Pursuant to 29 U.S.C. § 1367(a), supplemental jurisdiction is appropriate when state and federal claims "derive from a common nucleus of operative facts." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966); *see also, Van Bebber v. Dignity Health*, 1:19-cv-00264-DAD-EPG, 2019 WL 4127204, at *9 (E.D. Cal. Aug. 30, 2019) (exercising supplemental jurisdiction over a plaintiff's remaining causes of action because they arose out of the same employment relationship as their overtime claim).

69.    As noted above, all of the claims are subject to LMRA preemption. But even if all somehow were not preempted, that issue need not be resolved now, because it presents no barrier to removal. Any remaining claims are largely derivative from the preempted labor code claims, and all arise from the common nucleus of operative facts that Plaintiff and the Putative Class Group suffered wage and hour violations. The Court should exercise supplemental jurisdiction over the claims pursuant to 28 U.S.C. § 1367(a) given that the claims all derive out of these alleged facts, and to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings.

70.    Specifically, Plaintiff's claims are predicated upon facts and circumstances that are inextricably intertwined with his underlying employment wage and hour claims, and dependent upon an interpretation of the CBAs of 8 separate bargaining units. In addition, the wage claims are intertwined with and dependent upon an interpretation of the CBAs. As a result, all the pleaded underlying Labor Code violations emanate from and form part of the same "case or controversy," such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990); *Jimenez* 2021 WL 5999082, at *7 (noting, if only "some claims are completely preempted ... courts may find supplemental jurisdiction in the non-preempted claims if they arise out of a common nucleus of operative fact"). Specifically, courts routinely extend supplemental jurisdiction over wage and hour claims, even if they are not expressly subject to the LMRA preemption, on this basis. *See, e.g., Jimenez,* 2021 WL 5999082 at *7; *Landy v. Pettigrew Crewing, Inc.*, No. 219CV07474RGKAFM, 2019 WL 6245525, at *5 (C.D. Cal. Nov. 22, 2019) (extending supplemental jurisdiction over PAGA claims not covered by the CBA); *Sachs,* 2022 WL

489696, at *6; *Armenta v. Stater Bros. Markets*, No. 5:20-cv-02364-MSC-KK, 2021 WL 1102444, at *3 (C.D. Cal. Mar. 23, 2021). Given the above, considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising supplemental jurisdiction over all the underlying alleged violations in Plaintiff's Complaint.

## IV.    HBA HAS SATISFIED ALL OTHER PREREQUISITES FOR REMOVAL

71.    ***Removal Was Timely***. HBA was served with Plaintiff's Complaint on October 4, 2023. Ferrantella Decl., ¶ 3. This Notice is timely filed in accordance with 28 U.S.C. § 1446(b), because it is within thirty (30) days from when HBA was served with the pleadings setting forth the claims for relief upon which this removal is based. Under 28 U.S.C. Section 1446(b) and Federal Rule of Civil Procedure 6(a), the time to remove could not expire, at the earliest, until after November 3, 2023, the first day which is 30 days after HBA was served with the Summons and Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

72.    ***State Court Within this Court's Jurisdiction***. Venue is proper in the Northern District of California pursuant to 28 U.S.C. §§ 84(c) and 1391 because the county in which the State Court Action was pending (San Francisco) is found within this District.

73.    ***State Court Pleading Attached***. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by HBA are attached hereto as the following exhibits, including Plaintiff's Summons, Complaint, Civil Case Cover Sheet, and Civil Lawsuit Notice (Exhibit A); Defendant's Answer to Plaintiff's Complaint (Exhibit B). *See* Ferrantella Decl., ¶¶ 2-4; Exhibits A-B.

74.    ***Filing and Service of Notice of Removal***. This Notice will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Francisco.

75.    If this Court has a question regarding the propriety of this Notice of Removal, HBA requests it issue an Order to Show Cause so it can provide additional briefing on the grounds for this removal, including further detail regarding the full amount in controversy.

## RESERVATION OF RIGHTS

1    This Notice of Removal is filed subject to and with full reservation of rights, including but

2  not limited to defenses and objections to venue, improper service, and personal jurisdiction. No

3  admissions are intended hereby as to the propriety of liability or damages with respect to any aspect

4  of this case, and all defenses, motions, and pleas are expressly reserved.

5    WHEREFORE, HBA requests that the above action pending before the Superior Court of the

6  State of California for the County of San Francisco be removed to the United States District Court

7  for the Northern District of California.

8

9  DATED:  November 3, 2023                    OGLETREE, DEAKINS, NASH, SMOAK &
                                               STEWART, P.C.
10

11                                             By: /s/ Jesse C. Ferrantella

12                                                 Jesse C. Ferrantella
                                                   Yousaf M. Jafri
13                                                 Attorneys for HBA HARRIS BAY AREA,
                                                   LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT